UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
2012 MAY 16  P 4:04
US DISTRICT COURT
HARTFORD CT

JUAN VAZQUEZ,
  petitioner,

    v.

COMMISSIONER
  respondent.

:
:
:  PRISONER
:  Case No. 3:11CV1391(AVC)
:
:
:

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Juan Vazquez, currently confined at the MacDougall-Walker Correctional Center in Suffield, Connecticut, commenced this action for a writ of habeas corpus *pro se* pursuant to 28 U.S.C. § 2254. He challenges his Connecticut conviction for murder and conspiracy to commit murder on the ground that he was deprived of a fair trial by prosecutorial misconduct. For the reasons that follow, the petition is be denied.

### Facts

The Connecticut Appellate Court determined that the jury reasonably could have found the following facts: On the night of July 29, 1996, the victim and his friend, John Okum, went to a bar for a few drinks. Around midnight, they drove to a housing project in New Britain, Connecticut, to try to buy cocaine. Okum remained in the car while the victim approached several men to ask about buying cocaine. The victim returned to the car with the cocaine. As the two men started driving away, something

struck the car.  The victim told Okum to stop the car and the victim got out of the car to investigate.  A few moments later, Okum heard a gunshot and got out of the car.  He saw the victim lying on the ground, dead.  Okum drove away from the scene and located a police officer to whom he reported the incident.  At trial, two women identified the petitioner as the person who shot the victim and fled.  State v. Vazquez, 79 Conn. App. 219, 221, (2003).

Following a jury trial in the Connecticut Superior Court for the Judicial District of New Britain, the petitioner was convicted of murder and conspiracy to commit murder.  He was sentenced to a total effective term of imprisonment of sixty years.  On direct appeal, the petitioner argued that prosecutorial misconduct deprived him of due process and a fair trial.  The appellate court affirmed his conviction and the Supreme Court of the State of Connecticut denied his petition for certification.  See State v. Vazquez, 79 Conn. App. 219, 221, cert. denied, 266 Conn. 918 (2003).

In February 2004, the petitioner filed a petition for a writ of habeas corpus in state court, challenging his conviction on grounds unrelated to this action.  The petition was denied and the appeal dismissed.  See Vazquez v. Commissioner of Correction, 128 Conn. App. 425, cert. denied, 301 Conn. 926 (2011).

In September 2011, the petitioner commenced this action, challenging his conviction on the same ground of prosecutorial

misconduct raised on direct appeal.

## STANDARD

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws.  28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.  Estelle v. McGuire, 502 U.S. 62, 68 (1991).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The federal law, as defined by the Supreme Court, "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context."  Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir.), cert. denied, 537 U.S. 909 (2002).  Clearly established federal law is found in holdings, not dicta,

of the Supreme Court at the time of the state court decision. Carey v. Musladin, 549 U.S. 70, 74 (2006).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. Bell v. Cone, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. The state court decision must be more than incorrect; it also must be objectively unreasonable, "a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) (recognizing standard affording state-court rulings the benefit of the doubt that is highly deferential and difficult for petitioner to meet). In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court. Id. at 1398-99. Because collateral review of a conviction applies a different standard than the direct appeal,

4

an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a habeas petition. Brecht v. Abrahamson, 507 U.S. 619, 634 (1993).

## DISCUSSION

Prosecutorial misconduct does not give rise to a constitutional violation unless the misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. See Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). That the prosecutor's remarks may have been undesirable, or even universally condemned, does not rise to the level of a constitutional violation, unless the trial also was unfair. Darden v. Wainwright, 477 U.S. 168, 181 (1986). The petitioner must identify specific instances of "egregious misconduct," Donnelly, 416 U.S. at 647-48, that show that he was substantially prejudiced. United States v. Thomas, 377 F.3d 232, 244 (2d Cir. 2004). In evaluating a claim of prosecutorial misconduct, the court considers the comments in the context of the entire trial and evaluates "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct." United States v. Shareef, 190 F.3d 71, 78 (2d Cir. 1999) (citation omitted); see also United States v. Young, 470 U.S. 1, 12 (1985) (holding that the court must view prosecutorial misconduct in context and evaluate the probable effect of the remarks on the jury's ability to judge the

evidence fairly).

In analyzing these claims, the Connecticut appellate court applied state cases with holdings that mirror the applicable federal law.  Because the court applied the correct legal principles, the decision is not contrary to federal law.  Lurie v. Wittner, 228 F.3d 113, 127 (2d Cir. 2000), cert. denied, 532 U.S. 943 (2001).  Thus, the court considers whether the Connecticut appellate court's analysis was an unreasonable application of federal law.

The petitioner raised six examples of alleged prosecutorial misconduct on direct appeal: (1) during cross-examination, the prosecutor exceeded the scope of direct examination thereby introducing evidence prejudicial to the petitioner; (2) the prosecutor implied during cross-examination that the petitioner was lying; (3) the prosecutor negatively commented on the petitioner's right to assist in his defense; (4) the prosecutor improperly invited the petitioner to characterize other witnesses' testimony; (5) the prosecutor improperly vouched for the credibility of several of the state's witnesses during closing argument; and (6) the prosecutor improperly commented on facts not in evidence during closing argument when she drew an analogy between the experience of the eye-witnesses and experiences of jurors who may have witnessed notable historic events.  The petitioner did not object to any of the alleged

examples of prosecutorial misconduct at trial. The Connecticut appellate court reviewed all of the examples under the standard of review of unpreserved claims of error and rejected each claim.

The court determined that the first, second, third and sixth examples did not rise to the level of improper conduct. Vazquez, 79 Conn. App. at 228-29, 236. The respondent argues that the petitioner has not identified any Supreme Court precedent holding that these examples constitute prosecutorial misconduct or any argument challenging the Connecticut appellate court's treatment of these claims. This court agrees. In his opposition papers, the petitioner focuses on the application of Darden, DeChristoforo and Young, an argument focused only on the state court's treatment of the remaining two examples of improper conduct. Thus, the petition is denied as to any claims based on the first, second, third or sixth examples of allegedly improper conduct.

The fourth example addresses cross-examination. During her cross-examination of the petitioner, the prosecutor invited him to comment on the veracity of one of the women who had identified him as the shooter and several of the police detectives. 79 Conn. App. at 230-31. The appellate court considered the requisite factors in analyzing the claim of prosecutorial misconduct during cross-examination. The two eye-witnesses testified that the petitioner shot the victim. The petitioner

testified that he did not shoot the victim and was elsewhere when the shooting occurred. Other than this testimony, the appellate court concluded that the defense did nothing to invite this questioning. The court noted that the eye-witness testimony was central to the case and although the testimony of the detectives was important, it was circumstantial and not as critical to the prosecution. Although defense counsel neither objected to the questions at trial nor requested a curative instruction, the trial court gave detailed instructions regarding the role of the jury as the exclusive factfinder and the sole assessor of the credibility of all witnesses. In addition, the court separately addressed the credibility of police officers.

The appellate court also noted that the credibility of the eye-witnesses was supported by the state's evidence. Although the police failed to recover a weapon, they did find a nine millimeter bullet and casing. Both eye-witnesses testified that the petitioner's cousin came to the apartment and told the petitioner that the victim was trying to cheat him for his drugs. Upon hearing this, the petitioner left the apartment with a nine millimeter gun. Both eye-witnesses testified that the petitioner shot the victim in the side of the head at close range, which was consistent with the medical evidence. Both eye-witnesses stated that the petitioner returned to the apartment and fled out the back window. Although there were discrepancies between the eye-

witnesses' statements to the police and their testimony at trial, and between the information provided by each eye-witness, the appellate court concluded that the eye-witnesses' versions of the events supported each other in great detail and that the improper questioning did not deprive the petitioner of due process. Vazquez, 79 Conn. App. at 238-39.

The fifth example concerns closing argument. The prosecutor vouched for the testimony of the two eye-witnesses, the victim's friend, and the police officers. At oral argument, before the Connecticut appellate court, the state conceded that these remarks were improper. Id. at 232 & n.11.

The Connecticut Appellate Court again determined that the remarks were not invited by the defense. Despite the absence of any objection or request for a curative instruction, the trial court emphasized that the jury alone determined the facts and that the jury should disregard how the judge or lawyers characterized those facts. In addition, the court specifically instructed the jury that remarks by the lawyers are not evidence and must not be considered by the jury in determining the facts. The appellate court concluded that these instructions along with the strength of the prosecution's case mitigated any impropriety in closing argument. Id. at 239-42, 830 A.2d at 276-77.

While the prosecutor's remarks set forth in the fourth and fifth examples were found to be improper, the Connecticut

Appellate Court concluded that the strength of the state's case coupled with the court's instructions ensured that the petitioner was not deprived of a fair trial. The federal court's role is not to consider the remarks *de novo*, but rather to determine whether the state court's ruling was a reasonable application of federal law. The court concludes that the state court determination that the prosecutor's actions were not so egregious as to deprive petitioner of a fair trial was a reasonable application of federal law. Accordingly, the petition is denied.

## CONCLUSION

The petition for writ of habeas corpus [**Doc. #1**] is **DENIED**. The court concludes that the petitioner has not demonstrated that he was denied a constitutional right. Accordingly, a certificate of appealability will not issue. The clerk is directed to enter judgment and close this case.

**SO ORDERED** at Hartford, Connecticut this 11th day of May 2012.

/s/ Alfred V. Covello, USDJ
Alfred V. Covello
United States District Judge